**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| GEIMY JOHELA AGUILAR-RODRIGUEZ,      ) | |
|      ) | |
| Petitioner,      ) | No. 2:26-cv-02168-TLP-tmp |
| v.      ) | |
| SCOTT LADWIG,[1]      ) | |
| Respondent.      ) | |

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Petitioner Geimy Johela Aguilar-Rodriguez, a noncitizen detained in the West Tennessee Detention Facility in Mason, Tennessee, petitions for a writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1.)  The Court ordered Respondent to show cause why the Writ should not be granted.  (ECF No. 6.)  Respondent responded.  (ECF No. 8.)  Petitioner replied.  (ECF No. 10.) And for the reasons below, the Court **GRANTS** the Petition.

**BACKGROUND**

Petitioner is a twenty-seven-year-old Honduran citizen.  (ECF No. 10 at PageID 48.) She and her daughter entered the United States in June 2017 at the Gateway to the Americas Port of Entry in Laredo, Texas.  (ECF No. 8-1 at PageID 39.)  Petitioner requested asylum.  (*Id.*) After the Department of Homeland Security ("DHS") found that she expressed a credible fear of

---

[1] The proper respondent to the § 2241 Petition is the United States Immigration and Customs Enforcement District Director for the district in which the alien is being detained.  *See Roman v. Ashcroft*, 340 F.3d 314, 320–22 (6th Cir. 2003).  The Court therefore respectfully **DIRECTS** the Clerk to add "**Christopher Bullock**" as Respondent and to terminate Scott Ladwig as the named Respondent.  *See Deepak v. Ladwig*, No. 26-2218, ECF No. 12 at PageID 59 (W.D. Tenn.).

returning to Honduras, it issued Petitioner a Notice to Appear ("NTA") and released her. (*Id.* at PageID 36.) The NTA charges Petitioner as an "arriving alien" in violation of the Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I). (*Id.*)

The Memphis Police Department arrested Petitioner about five years later for domestic violence. (ECF No. 8-3 at PageID 45.) At the status conference on May 8, 2026, Petitioner provided records which indicate that the state dropped those charges. And then on January 20, 2026, the Shelby County Sheriff's Office arrested her for assault. (*Id.*) But Petitioner presented records showing that the state dropped those charges too. U.S. Immigration and Customs and Enforcement ("ICE") took custody of Petitioner after her recent arrest. (*Id.*) She is currently in ICE custody at the West Tennessee Detention Center.[2] (*See* ECF No. 20.)

Petitioner alleges that DHS and the Executive Office of Immigration Review ("EOIR") have not provided her a bond hearing. (*See* ECF No. 1 at PageID 6.) Instead, DHS and EOIR determined that she is subject to mandatory detention, a change from the decades-long practice of affording noncitizens in Petitioner's position with bond hearings before their removal proceedings. (*See* ECF No. 10 at PageID 57–58.) The Government changed its practice in July 2025, when DHS, the Department of Justice ("DOJ"), and ICE issued a new policy. *See, e.g.*, *Monge-Nunez v. Ladwig*, No. 25-3043, 2025 WL 3565348, at *1 (W.D. Tenn. Dec. 12, 2025).

---

[2] In the Show Cause Order, the Court ordered Respondent not to remove Petitioner from the Western District of Tennessee while the Petition was pending. (ECF No. 6.) But on March 20, 2026, Respondent filed a sealed emergency motion to transfer Petitioner to a medical facility outside of the Western District of Tennessee. (ECF No. 12.) The Court granted the Motion in part the same day (ECF No. 13), and held a hearing where Respondent's counsel and Petitioner's counsel appeared. (ECF No. 19.) Respondent returned the Petitioner to the West Tennessee Detention Facility in mid-April. (ECF No. 20.) The Court held another conference on May 8, 2026, where Petitioner appeared. (ECF No. 24.) The Motion to Transfer is now **MOOT**.

According to the new policy, noncitizens who have resided in the United States for over two years and who are apprehended in the interior of the country are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Id.* But before July 2025, DHS afforded those same persons bond hearings under 8 U.S.C. § 1226(a). *Id.*; *Godinez-Lopez v. Ladwig*, No. 25-2962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). The Board of Immigration Appeals ("BIA") upheld this new policy in the case of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

And for Petitioner, this means that she now faces continued detention without the possibility of bond. Petitioner alleges that her continued detention under § 1225(b) violates her Fifth Amendment right to due process, her Fourth Amendment protection against unreasonable seizure, the INA, and her Eighth Amendment right against cruel and unusual punishment.[3] (ECF No. 1 at PageID 6–7.) She asks the Court to grant the Petition and order Respondent "to release [her] on reasonable bond or parole." (*Id.* at PageID 7.)

This is not an issue of first impression before the Court. And Respondent detaining Petitioner under § 1225(b)(2)(A) instead of § 1226(a) is not an isolated event. Indeed, the Court has recently considered this same legal question many times and consistently held that § 1226 applies. *Padilla-Ugsha v. Ladwig*, No. 25-3045, 2025 WL 3638007, at *7 (W.D. Tenn. Dec. 15, 2025); *see Monge-Nunez*, 2025 WL 3565348, at *6; *Cordova v. Ladwig*, No. 25-3037, 2025 WL 3679764, at *7 (W.D. Tenn. Dec. 18, 2025); *Rios Pena v. Ladwig*, No. 25-3082, 2025 WL 3679766, at *7 (W.D. Tenn. Dec. 18, 2025); *Moreno-Espinoza v. Ladwig*, No. 25-3093, 2025

---

[3]Because the Court grants the Petitioner based the INA and due process, it declines to address the Fourth Amendment claim here. And as for the Eighth Amendment, "conditions of confinement claims seeking relief in the form of improvement of prison conditions or transfer to another facility are not properly brought under § 2241." *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (citation omitted).

WL 3691452, at *9 (W.D. Tenn. Dec. 19, 2025); *Urrutia-Diaz v. Ladwig*, No. 25-3098, 2025

WL 3689158, at *7 (W.D. Tenn. Dec. 19, 2025) ("So even though Petitioner here has resided in

the United States for less than a year, § 1226 governs because she is not *seeking admission* but is

*already in this country*.").

　　Because of the increasing frequency of these habeas petitions, other district courts in this

circuit have also been asked to consider which statutory provision governs.  Many have also

determined that § 1226(a) fits in this scenario.  *See, e.g.*, *Godinez-Lopez*, 2025 WL 3047889;

*Lopez-Campos*, 797 F. Supp. 3d at 784; *Barco Mercado v. Francis*, 811 F. Supp. 3d 487

(S.D.N.Y. 2025).  Others have not.  *See Gonzalez v. Ladwig*, No. 2:26-2017, 2026 WL 413602

(W.D. Tenn. Feb. 13, 2026); *Oropeza-Higareda v. Bullock*, 26-2285, ECF No. 20 (W.D. Tenn.).

As the Second Circuit recently noted when finding § 1226(a) governs detentions such as

Petitioner's:

> Our holding is consistent with the decisions of over 370 district judges across the
> Nation who (as of mid-February 2026) have also rejected the government's
> position. In other words, over ninety percent of district court judges have sided with
> Petitioner.  Indeed, in this Circuit, as of mid-February 2026, the government has
> prevailed in only approximately fifteen cases, while losing in approximately 145
> cases.  The Seventh Circuit has preliminarily reached the same conclusion in
> reviewing a stay motion.  *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161
> F.4th 1048, 1062 (7th Cir. 2025).  Although divided panels in two other circuits
> have agreed with the government, *see Buenrostro-Mendez v. Bondi*, 166 F.4th 494,
> 508 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026), we
> respectfully find the statutory analysis in those decisions, which largely mirrors the
> government's flawed arguments in this case, to be unpersuasive . . . .

*Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *4 (2d Cir. Apr. 28, 2026) (some

internal citations omitted).  The Sixth Circuit has heard arguments on this issue but has yet to

rule.

## LEGAL STANDARD

A petition for habeas corpus enables a person to challenge the legality of their custody. *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).  And its traditional function "is to secure release from illegal custody."  *Preiser*, 411 U.S. at 484; *see* 28 U.S.C. 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]").  Petitioner here asserts that her custody under 8 U.S.C. § 1225(b)(2)(A) is unlawful.

Sections 1225 and 1226 of the INA typically govern the detention of noncitizens during removal proceedings.  *See* 8 U.S.C. §§ 1225, 1226.  Section 1225(b)(2)(A) governs the mandatory detention of an "applicant for admission" after an immigration officer has determined that the applicant is not entitled to admission in the United States.

> (b)  Inspection of applicants for admission
>     . . .
>     (2)  Inspection of other aliens
>         (A)  In general
>             Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).  The INA defines an "applicant for admission" as an alien "present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  And "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  Again, detention is mandatory under this section.  *See* 8 U.S.C. § 1225(b)(2)(A).

Section 1226(a) provides for discretionary detention:

> (a)     Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1)     may continue to detain the arrested alien; and
> (2)     may release the alien on—
>       (A)     bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
> . . .

8 U.S.C. § 1226(a).  But § 1226(c), known as the Laken Riley Act, provides for the mandatory detention of aliens found inadmissible or deportable under specific provisions and who have been "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes.  8 U.S.C. § 1226(c)(1)(E)(ii).  Aliens arrested and detained under this section "have a right to request a custody redetermination (i.e., bond hearing) before an Immigration Judge." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 777 (E.D. Mich. 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  That immigration judge "evaluates whether there is a risk of nonappearance or danger to the community." *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).  With those provisions in mind, the Court now turns to the Petition.

## ANALYSIS

The issue here is whether § 1225(b)(2)(A) or § 1226(a) applies to Petitioner's detention. The questions of law in this case, and the challenges to the government's policy and practice, substantially overlap with those at issue in the previous cases.  So in the interest of judicial economy, the Court addresses the main arguments at issue here—administrative exhaustion, statutory interpretation, and procedural due process—in a more succinct manner than in earlier cases.

6

I.    **Administrative Exhaustion**

Petitioner has not exhausted her administrative remedies.  (*See* ECF No. 1 at PageID 2.)

To do so, she would need to appeal her denial of a bond hearing to the Board of Immigration

Appeals ("BIA").  Respondent argues that the Court should require Petitioner to go through that

process before considering her Petition.  (ECF No. 8 at PageID 26.)

When Congress mandates it, courts require petitioners to exhaust their administrative

remedies.  *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  But when, as here, Congress

has not imposed a statutory exhaustion requirement, the decision whether to require a petitioner

to exhaust lies within "sound judicial discretion."  *Id*.  In exercising that discretion, the Supreme

Court has explained that "federal courts must balance the interest of the individual in retaining

prompt access to a federal judicial forum against countervailing institutional interests favoring

exhaustion."  *Id.* at 146.  Those institutional interests are "protecting administrative agency

authority and promoting judicial efficiency."  *Id.* at 145.

The Supreme Court also identified situations in which the interest of the individual

weighs heavily against the institutional interests.  *See id.* at 146–49.  Relevant here, "an

administrative remedy may be inadequate where the administrative body . . . has otherwise

predetermined the issue before it."  *Id.* at 148 (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n.

14 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (in view of Attorney General's

submission that the challenged rules of the prison were "validly and correctly applied to

petitioner," requiring administrative review through a process culminating with the Attorney

General "would be to demand a futile act"); *see also Herr v. U.S. Forest Serv.*, 803 F.3d 822–23

(6th Cir. 2015) ("If administrative review would come to naught, if any efforts before the agency

7

would be pointless, the courts do not insist that litigants go through the motions of exhausting the claim anyway.") (internal quotations omitted).

The BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (2025) makes requesting a bond hearing from an immigration court futile.  That is because the BIA's decision—which is binding on immigration judges—upholds the very policy Petitioner is challenging here.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 228 (holding that aliens "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer" because "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission'"); *see also Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025) (reasoning that "administrative review is not likely to change Respondents' position that § 1225(b)(2)(A) applies in this context").  What is more, the BIA lacks authority to review constitutional challenges.  *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006).  This means that Petitioner can only bring her constitutional claims in federal court.

It follows that requiring exhaustion in this case would not further the ends of judicial efficiency and protecting administrative authority because it would only delay the resolution of Petitioner's legal questions.  her individual interest in having prompt access to this forum outweighs any institutional interests at stake.  Requiring Petitioner to wait for the BIA to address an issue it has already decided creates hardship for hardship's sake.  The Court declines to impose such a result here.

## II.    Statutory Interpretation

The Parties disagree about whether § 1225(b)(2)(A) or § 1226(a) controls Petitioner's detention here.  In short, Petitioner argues that § 1225 governs the detention of recent noncitizens

at or near the border and that § 1226 governs the pre-removal detention of noncitizens already present in the United States.  (ECF No. 10 at PageID 52.)  Respondent counters that § 1225 applies to Petitioner because she "applied for admission at a port of entry and thus was and remains an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border."  (ECF No. 8 at PageID 26.)

Familiar principles of statutory interpretation control the analysis.  Courts construe statutory text "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."  *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see* Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision is to be given effect.").  To apply this approach, courts give each word within the statute "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010, (2017)).  This includes the presumption "that [the] legislature says in a statute what it means and means in a statute what it says."  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  For the reasons below, these principles resolve the dispute in Petitioner's favor.

Detention under § 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]"  8 U.S.C. § 1225(b)(2)(A).  This means that the alien must be an "applicant for admission" who is "seeking admission" and one who is "not clearly and beyond a doubt entitled to be admitted."

9

Section 1225(a)'s "seeking admission" language does not apply to Petitioner under these facts. And "[t]he term 'seeking' is in the present participle form, which expresses *present* action." *Cunha*, --F.4th--, 2026 WL 1146044, at *6 (citation omitted). With that in mind, to fall under § 1225(b)(2)(A), the alien must be *actively* seeking admission, not simply residing in the country after entering it unlawfully. *See id.*, at *23 ("Petitioner entered the United States unlawfully in 2004 or 2005 and has resided here ever since. He is therefore deemed to be an 'applicant for admission' by Section 1225(a), but he is not 'seeking admission' because he is not requesting lawful entry into the United States after inspection and authorization."). Because Petitioner's unlawful entry occurred over a year ago, the Court is not persuaded that she was actively seeking admission when ICE detained her here.[4] *See Hernandez v. Ladwig*, No. 26-2081, 2026 WL 324020, at *6 (W.D. Tenn. Feb. 6, 2026) ("The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for over two years. To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.").

The plain meaning of § 1226 better captures Petitioner's situation. For example, it applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Again, ICE detained Petitioner in the interior of the country where she had already resided. So the Attorney General has the discretion under this section to "continue to detain [her]" or he "may release [her] on

---

[4] The INA recognizes two classes of aliens who are not seeking admission, but that does not preclude the existence of other alien classes that do not fall under § 1225. *See, e.g.*, *Padilla-Ugsha*, 2025 WL 3638007.

bond." (*Id.*)  He may not, though, deny him the bond hearing to which she is entitled.  *See* 8

C.F.R. § 1236.1(c)(8), (d)(1).

The titles of the statutory provisions also support this distinction.  *See Godinez-Lopez*,

2025 WL 3047889, at *4.  "[T]he title of a statute in the heading of a section [is a] tool[]

available for the resolution of a doubt" about a statute's meaning.  *Dubin v. United States*, 599

U.S. 110, 121 (2023).  Section 1225's title is "Inspection by immigration officers; expedited

removal of inadmissible *arriving* aliens; referral for hearing."  8 U.S.C. §1225 (emphasis added).

Section 1225's title then envisions *arriving* aliens placed in expedited removal.  But again,

Petitioner was detained far from the border.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287

(2018).  Meanwhile, § 1226's title is "Apprehension and detention of aliens."  8 U.S.C. § 1226.

That title fits here.  Petitioner was apprehended, not while arriving in the United States, but over

a year later.  And she is *now* detained.  Section 1225's therefore seems inapplicable to aliens in

Petitioner's shoes.  *See Hernandez*, 2026 WL 324020, at *6 ("Here, § 1225's title describes

'arriving aliens' who are placed into 'expedited removal' proceedings.  But Hernandez was not

'arriving' when he was detained far away from the United States border, after having been in this

country for more than two years.").  But § 1226's title seems spot on.

That is not all.  Respondent's interpretation of § 1225(b) makes § 1226(c)'s mandatory

detention provision superfluous.  To be sure, subsections 1226(c)(1)(E)(i)–(ii) provide for

mandatory detention of certain aliens.  But it applies only to those aliens who both entered the

country without inspection under 8 U.S.C. § 1182(a)(6)(A), (C), and (7) and who are also

"charged with, . . . arrested for, . . . convicted of . . ." certain crimes.[5]  8 U.S.C. §

---

[5] Those crimes are those with "the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."  8 U.S.C. § 1226(c)(1)(E)(ii).

1226(c)(1)(E)(i)–(ii). And so to interpret § 1225(b)(2)(A) as Respondent argues would subject mandatory detention to every alien who did not lawfully enter the country. This reading would strip 1226(c) of meaning. What is more, Congress only recently added subsection 1226(c)(1)(E) when it passed the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025). The Court declines to presume that Congress pointlessly amended the statute with a redundant provision when it most recently considered it. *See Bilski v. Kappos*, 561 U.S. 593, 607–08 (2019) ("This would violate the cannon against interpreting any statutory provision in a manner that would render another provision superfluous.").

At bottom, §§ 1225 and 1226 are different statutory provisions that apply to different contexts. And the Supreme Court has already distinguished the two. In *Jennings*, the Court determined that the government may "detain certain aliens seeking admission into the country" and that the § 1225 process "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." 583 U.S. at 287, 289. Whereas § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." 583 U.S. 281, 289 (2018) (emphasis added). Respondent has articulated no compelling reason to stray from this commonsense understanding.

---

Although Respondent did not mention this section in his briefing, the Court recognizes that Petitioner had been arrested for assault. But nothing here shows that her assault charge meets the essential elements of those crimes—the record does not reflect she was charged with assaulting a law enforcement officer or for causing death or serious bodily injury to another person. The Laken Riley Act's mandatory detention provision therefore does not apply to Petitioner. At any rate, the State entered nolle prosequi on Petitioner's 2023 domestic violence and 2026 assault charges. (*See* ECF No. 24.)

So the Court finds § 1226 governs the arrest and detention of an alien like Petitioner, who has been residing in the interior of the United States for several years.  Petitioner is therefore subject to the discretionary bond process under § 1226.

**III.    Due Process**

Because the Court has found that § 1226(a) applies to Petitioner's detention, she is owed the process given to him under the statute.  *See, e.g. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien in [Petitioner's] position has only the rights . . . that Congress has provided by statute.").  Petitioner alleges that Respondent violates her due process rights by continuing to detain him.  (ECF No. 1 at PageID 6.)  Respondent counters that because Petitioner complains that she is detained under the wrong statute, even if her detention is unlawful, it is not unconstitutional.  (ECF No. 8 at PageID 33.)  Or put another way, Respondent asserts that § 1225 has already afforded Petitioner the due process that Congress chose to provide him.  (*Id*. at PageID 30–31(citing *Thuraissigiam*, 591 U.S. at 139–40; *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).)

The Fifth Amendment of the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  And to evaluate the level of process owed to a noncitizen, the Sixth Circuit generally "applies the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976)."  *Godinez-Lopez*, 2025 WL 3047889, at *6 (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)).  *Matthews* considers (1) "the private interest that will be affected by the official action" (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

13

All three factors weigh in Petitioner's favor here. she has a strong liberty interest in being free from physical detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The risk of erroneous deprivation is high here considering that Respondent and the BIA's current position is to afford him no bond hearing whatsoever. And bond hearings are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties. So the Court finds that the Government's interest in detaining Petitioner without that procedural safeguard does not outweigh Petitioner's liberty interest or the risk of erroneous deprivation. In fact, as it stands, Petitioner has no meaningful opportunity for an immigration judge to consider whether she is a danger to society or a flight risk. And the fact that Petitioner has been residing in the United States with no known criminal history further tips the scales in her favor.

This all makes clear that Petitioner is entitled to a bond hearing before an immigration judge. And not only that, but her continued detention without that bond hearing violates her due process rights. The Court therefore **GRANTS** the Petition.

## IV.    Remedy

In her Reply, Petitioner states that she seeks "immediate release from immigration detention under 28 U.S.C. § 2241." (ECF No. 10 at PageID 65.) And Respondent argues that "the only appropriate remedy is a bond hearing before an immigration judge, during which an immigration judge can properly determine in the first instance whether to grant bond." (ECF No. 8 at PageID 33.) The parties maintained these positions at the May 8, 2026, status conference. (*See* ECF No. 24.)

As another court in this District noted, "[a]mong the overwhelming number of district courts granting similar petitions, remedies have differed as to the manner of release."

14

*Hernandez*, 2026 WL 324020, at \*8 (citing Cardona v. Ladwig, No. 25-1451, 2025 WL 3722009, at \*7 (M.D. Tenn. Dec. 3, 2025) (surveying approaches)).  Sometimes courts have granted conditional release by ordering the respondent to release the petitioner if they are not granted a bond hearing within a certain number of days.  *See Garcia-Sanchez v. Acuna*, No. 25-3115, ECF No. 12 (W.D. Tenn. Jan. 13, 2026) ("Respondents are further ordered to provide Garcia-Sanchez with a bond hearing before an immigration judge under 8 U.S.C. § 1226(a) within seven days of the entry of this Order or otherwise release him.").  And sometimes courts—including this one—have ordered immediate release pending a bond hearing.  *See Cordova*, 2025 WL 3679764, at \*8 ("Respondent is ordered to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) and 8 C.F.R. § 1236.1(c)(8), (d)(1) within seven days of the entry of this Order and to release Petitioner pending the bond hearing." (emphasis omitted)).  Still at other times courts have ordered immediate release with no mention of a bond hearing.  *See Hernandez*, 2026 WL 324020, at \*9 ("Respondent is ordered to release Hernandez immediately.").

With that said, immediate release is the appropriate remedy here because Petitioner's detention not only violated procedural due process but deprived her of liberty for several months.  The Court still acknowledges that release—whether immediate or otherwise on a bond hearing or otherwise—may "be a distinction without a difference."  *Id.*  Indeed, ICE has the discretion to detain an illegally present alien under § 1226(a) at any time.  *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").  But if the Government later decides to detain Petitioner under § 1226(a), it must do so lawfully and provide her a bond hearing on the merits.

## V.      Attorney's Fees and Costs

Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.  (ECF No. 1 at PageID 7.)  Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b).  The Federal Rules require that claims for attorneys' fees and related expenses be made by motion.  Fed. R. Civ. P. 54(d)(2)(A).  So Petitioner must timely file a motion that complies with Local Rule 54.1(b) to seek attorneys' fees and costs.  *See* L.R. 54.1(b).

## CONCLUSION

For the reasons above, the Court **GRANTS** the Petition.  The Court therefore **ORDERS** Respondent to release Petitioner immediately and **ENJOINS** Respondent from pursuing Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A).

**SO ORDERED**, this 8th day of May, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

16